IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| THE SOUTHERN NEW ENGLAND, TELEPHONE COMPANY<br><br>Plaintiff,<br><br>vs.<br><br>1003 DONNELLY AVENUE INC.; GLOBAL NAPS, INC.; GLOBAL NAPS NEW HAMPSHIRE, INC.; GLOBAL NAPS NETWORKS, INC.; GLOBAL NAPS REALTY, INC., and FERROUS MINER HOLDINGS, LTD.,<br><br>Defendants. | CIVIL ACTION NO.<br><br>1:08-CV-3816-CC |

**ORDER**

This matter is presently before the Court on Defendants Global NAPS New Hampshire, Inc. and Ferrous Miner Holdings, Ltd.'s Motion to Dismiss [Doc. No. 15], Defendants 1003 Donnelly Avenue, Inc., Global NAPS, Inc., Global NAPS Networks, Inc. and Global NAPS Realty, Inc.'s Motion to Stay Discovery [Doc. No. 21], and Defendants 1003 Donnelly Avenue, Inc., Global NAPS, Inc., Global NAPS Networks, Inc. and Global NAPS Realty, Inc.'s Motion to Extend All Deadlines [Doc. No. 35]. The Court considers each motion below.

**I.    MOTION TO DISMISS**

   A.    Standard of Review

Defendants Global NAPS New Hampshire, Inc. ("GN New Hampshire") and Ferrous Miner Holdings, Ltd. ("Ferrous Miner") have brought a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). Plaintiff The Southern New England Telephone Company ("SNET") bears the burden of demonstrating personal jurisdiction over GN New Hampshire and Ferrous Miner. Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1268-69 (11th Cir. 2002)

(citing Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir. 1988)). Where, as here, an evidentiary hearing is not held on a motion to dismiss for lack of personal jurisdiction, "the plaintiff must establish a prima facie case of personal jurisdiction over a nonresident defendant." Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990) (citation omitted). The standard for determining when the plaintiff has met its burden is that of a motion for directed verdict. Id. This Court "must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits." Id. Additionally, "where the plaintiff's complaint and the defendant's affidavits conflict, the district court must construe all reasonable inferences in favor of the plaintiff." Id.

  B. Contentions of the Parties

GN New Hampshire and Ferrous Miner assert that SNET has not pled enough facts in support of personal jurisdiction over them. Defendants also contend that, even if the allegations in the Complaint were sufficient, the exercise of personal jurisdiction over them is not permitted by Georgia's long arm statute and asserting jurisdiction would violate the Due Process Clause of the Fourteenth Amendment. GN New Hampshire and Ferrous Miner state that they do not transact business in Georgia and they do not own, use or possess property in Georgia.

SNET relies primarily on the alter ego theory to establish jurisdiction, emphasizing that Defendants 1003 Donnelly Avenue, Inc. ("1003 Donnelly"), Global NAPs, Inc. ("Global NAPs"), Global NAP Networks, Inc. ("Global Networks") and Global NAPs Realty, Inc. ("Global Realty") are not challenging the Court's personal jurisdiction over them and arguing that the Court likewise has personal jurisdiction over GN New Hampshire and Ferrous Miner because they are alter egos of Defendant Global NAPs. Additionally, SNET contends that Defendants GN New Hampshire and Ferrous Miner are collaterally estopped from disputing that they are the alter egos of Defendant Global NAPs. Lastly, SNET argues that, even if GN New Hampshire and Ferrous Miner are not collaterally estopped, the Court should allow

SNET to amend its Complaint to allege facts sufficient to demonstrate that GN New Hampshire and Ferrous Miner are alter egos of Global NAPs.

### C.    Background

On July 1, 2008, SNET obtained a default judgment of almost $6 million against GN New Hampshire, Ferrous Miner, Global NAPs, Global Networks, and Global Realty (collectively, the "judgment debtors"). (Compl.¶ 2.) The default judgment was entered by the United States District Court for the District of Connecticut as a sanction for the judgment debtors' repeated violations of that court's discovery orders. (Id.) SNET filed the instant case on December 17, 2008, seeking to set aside a fraudulent transfer of real property, commonly known as 1003 Donnelly Avenue, Atlanta, Georgia ("the Atlanta Property"), by the judgment debtors to a related entity. (Compl. ¶ 1.) The Complaint was filed in order to enable SNET to execute upon the Atlanta Property to satisfy the default judgment. (Id.) SNET alleges that the judgment debtors have attempted to shield assets from creditors. (Compl. ¶2.) SNET alleges that the Atlanta Property was purchased with Global NAPs funds but was first titled in the name of Global Realty before being conveyed to 1003 Donnelly. (Compl. ¶3.) 1003 Donnelly, however, paid nothing for the Atlanta Property, and it continues to be used by the judgment debtors. (Id.) 1003 Donnelly, as well as the other judgment debtors, are owned and controlled by the same individual, Frank Gangi. (Id.) SNET seeks a declaration that the Atlanta Property was fraudulently conveyed to 1003 Donnelly. (Compl. ¶4.)

The Complaint alleges that all Defendants are Delaware corporations with principal places of business in Massachusetts. (Compl. ¶¶6-11.) It does not include any allegations regarding GN New Hampshire and Ferrous Miner's connection with Georgia.  In connection with their motion to dismiss, GN New Hampshire and Ferrous Miner filed the Declaration of Frank Gangi, which states that the aforementioned Defendants do not have direct business relationships in Georgia, have offices in Georgia, transact business in Georgia, advertise or solicit business in

Georgia, or own any real or personal property in Georgia. (Declaration of Frank Gangi [Doc. No. 15-3].) The declaration states that neither company was involved in the conveyance of the Atlanta Property. (Id.)

### D. Analysis

To determine whether personal jurisdiction exists, this Court engages in a two-step inquiry:

> First, we determine whether the exercise of jurisdiction is appropriate under the forum state's long-arm statute. Second, we examine whether the exercise of personal jurisdiction over the defendant would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution, which requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice."

Mutual Services Ins. Co. v. Frit Industries, Inc., 358 F.3d 1312, 1319 (11th Cir. 2004) (citations omitted). Georgia's long-arm statute has been construed as permitting the exercise of personal jurisdiction to the maximum extent permitted by constitutional due process. See Innovative Clinical and Consulting Services, LLC v. First National Bank of Ames, 279 Ga. 672, 676, 620 S.E.2d 352, 356 (2005). Accordingly, this Court need not analyze the Georgia long-arm statute and may exercise personal jurisdiction if permitted under the United States Constitution. Peridyne Tech. Solutions, LLC v. Matheson Fast Freight, Inc., 117 F.Supp.2d 1366, 1369 (N.D. Ga. 2000).

Personal jurisdiction over a non-resident defendant may be based on general or specific jurisdiction. General personal jurisdiction "arises from a defendant's contacts with the forum [state] that are unrelated to the cause of action being litigated" and "require[s] a showing of continuous and systematic general business contacts between the defendant and the forum state." Consol. Dev. Corp. v. Sherritt, Inc., 216 F.3d 1286, 1292 (11th Cir. 2000). Specific jurisdiction, which is perhaps more commonly analyzed by federal courts, "arises out of a party's activities in the forum that are related to the cause of action alleged in the complaint." Id. at 1291.

For specific jurisdiction purposes, due process requires that "in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that maintenance of the suit does not 'offend traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). A defendant must have "sufficient minimum contact with the forum state to provide 'fair warning that a particular activity may subject him to the jurisdiction of a foreign sovereign.'" Club Car, Inc. v. Club Car (Quebec) Imp., Inc., 362 F.3d 775, 784 (11th Cir. 2004) (citation omitted). Minimum contacts are present where (1) the contacts are related to the plaintiff's cause of action or have given rise to it, (2) the contacts involve some act by which defendant purposefully avails itself of the law of the forum state, and (3) the defendant's contacts with the forum are such that the defendant should reasonably anticipate being haled into court there. See United States v. Carrillo, 115 F.3d 1540, 1542 (11th Cir. 1997) (citation omitted). If minimum contacts are present, the Court will consider whether the exercise of jurisdiction violates traditional notions of fair play and substantial justice. Id.

SNET appears to concede that if the Court considers solely Defendants GN New Hampshire and Ferrous Miner's contacts with Georgia, the exercise of personal jurisdiction over these Defendants does not comport with due process principles. However, SNET contends that the Court may nonetheless exercise jurisdiction under an alter ego theory.

### 1.     *Alter Ego Theory*

SNET submits that this Court has personal jurisdiction over GN New Hampshire and Ferrous Miner because they are the alter egos of Global NAPs, who does not and cannot contest personal jurisdiction in this Court. This Court agrees with SNET's position that the alter ego theory may be considered in connection with a court's personal jurisdiction analysis:

> [F]ederal courts have consistently acknowledged that it is compatible

> with due process for a court to exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court.

Estate of Thompson v. Toyota Motor Corp. Worldwide, 545 F.3d 357, 362 (6th Cir. 2008) (quoting Patin v. Thoroughbred Power Boats, Inc., 294 F.3d 640, 653 (5th Cir. 2002)). Georgia courts have recognized that piercing the corporate veil and attributing contacts accordingly, when it has been determined that a corporation is the alter ego of another, is a sufficient basis for exercising personal jurisdiction. Avanti Group (USA), Ltd. v. Hart, Schaffner & Marx, 173 Ga. App. 831, 834, 328 S.E.2d 433 (1985).

The rationale for exerting personal jurisdiction over the alter ego of another corporation is because the two corporations are the same entity, thus the jurisdictional contacts of one are the jurisdictional contacts of the other for the purposes of the constitutional due process analysis. Patin, 294 F.3d at 653.

> It is true that the separate identity of a subservient corporation is not destroyed merely by the fact that it is used by the parent for the parent's ends, or even by the fact that they have the same officers or the offices. To establish the alter ego doctrine it must be shown that the stockholders' disregard of the corporate entity made it a mere instrumentality for the transaction of their own affairs; that there is such unity of interest and ownership that the separate personalities of the corporation and the owners no longer exist; and to adhere to the doctrine of corporate entity would promote injustice or protect fraud.

Avanti Group, 173 Ga.App. at 834 (citations and marks omitted).

In order to establish that a defendant is an alter ego of another, it must be determined that the entities operated in a manner that completely disregarded their legal separation. Derbyshire v. United Builders Supplies, Inc., 194 Ga. App. 840, 844, 392 S.E.2d 37 (1990). "Whether or not the corporate entity should be disregarded depends upon the particular circumstances involved." Avanti Group, 173 Ga.App. at 834 (quoting Midtown Properties, v. George F. Richardson, Inc., 139 Ga.App. 182, 185, 228 S.E.2d 303 (1976)). The corporation "must have been used as a subterfuge so that to observe [the corporate entity] would work an injustice." Amason v.

- 6 -

Whitehead, 186 Ga. App. 320, 321, 367 S.E.2d 107, 108.

Although the Court agrees with Plaintiff's position that personal jurisdiction may be properly exercised over a defendant that is the alter ego of another defendant with sufficient minimum contacts with the forum state, the Court finds that Plaintiff's Complaint in this action does not contain sufficient allegations of alter ego to establish a prima facie case of personal jurisdiction pursuant to this theory. In addition, there is no record evidence on this point that would enable the Court to determine whether the motion to dismiss should be denied because Defendants GN New Hampshire and Ferrous Miner are plausibly alter egos of Defendant Global NAPs. The Complaint alleges only that Frank Gangi controlled Global NAPs, Global Realty, and 1003 Donnelly. There are no allegations regarding Defendants GN New Hampshire and Ferrous Miner's relationship with Global NAPs. The Court finds, therefore, that Plaintiff has failed to establish a prima facie case of personal jurisdiction by virtue of alter ego allegations in the Complaint.

## 2.   *Collateral Estoppel*

Plaintiff asserts that GN New Hampshire and Ferrous Miner are collaterally estopped from arguing that they are not alter egos of Global NAPs. "Collateral estoppel bars relitigation of a previously decided issue when the parties are the same (or in privity) if the party against whom the issue was decided had a full and fair opportunity to litigate the issue in the earlier proceeding." In re Southeast Banking Corp., 69 F.3d 1539, 1552 (11th Cir. 1995). It has been established that in order for a federal court's ruling on an issue in a prior case to have preclusive effect in a subsequent case in federal court, four elements must be satisfied:

> (1) the issue at stake must be identical to the one involved in the prior litigation; (2) the issue must have been actually litigated in the prior suit; (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that action; and (4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding.

CSX Transportation, Inc. v. Brotherhood of Maintenance of Way Employees, 327

F.3d 1309, 1317 (11th Cir. 2003) (citing I.A. Durbin, Inc. v. Jefferson Nat'l Bank, 793 F.2d 1541, 1549 (11th Cir. 1986)). SNET assert that, because the issue of alter-ego was decided in the default judgment case in the Connecticut District Court, the defendants are precluded from raising the alter ego issue again. SNET claims that, in the case styled The Southern New England Telephone Company v. Global NAPs, Inc., Case No. 3:04-CV-2075-JCH (D. Conn.) ("the Connecticut Case"), the court ruled that Defendants were all alter-egos of each other.

The Court first examines whether the alter ego issue was identical in the Connecticut Case and in the case before this Court. The Court easily concludes that the alter ego issue was a matter pending before the Connecticut Court, just as it is in the instant motion. Defendants GN New Hampshire and Ferrous Miner contend that the issue is not identical because this Court would not apply Connecticut law to determine if GN New Hampshire and Ferrous Miner are alter egos of Global NAPs. Defendants do not, however, explain how the Connecticut law on alter ego differs from Georgia, Delaware, or Massachusetts law on the issue. In fact, Defendants do not contend that the law differs at all. Defendants do not even take a position as to which state's law the Court should apply in this case. The Court nonetheless concludes, consistent with Multi-Media Holdings, Inc. v. Piedmont Center, 15 LLC, 262 Ga. App. 283, 583 S.E.2d 262 (2003), that Georgia courts would not apply Delaware law in this case,[1] and this Court's own review of alter ego principles in Connecticut, Georgia, and Massachusetts reflects substantial similarities.[2] The Court therefore concludes that the same issue was at stake in the

---

[1] Indeed, based on Multi-Media Holdings, it appears that Georgia courts would apply Connecticut law to the instant action.

[2] The alter ego standard in Georgia has been previously discussed in this Order. In Connecticut, "[c]ourts will . . . disregard the fiction of a separate legal entity to pierce the shield of immunity afforded by the corporate structure in a situation where the corporate entity has been so controlled and dominated that justice requires liability to be imposed on the real actor." Angelo Tomasso, Inc. v. Armor Constr. & Paving, Inc., 447 A.2d 406, 410

Connecticut Case and in the instant motion.

In order for the collateral estoppel doctrine to apply in this case, the alter ego issue must have been actually litigated in the Connecticut Case. For an issue to have been actually litigated for collateral estoppel purposes, it has to have been adjudicated on the merits. See Bates v. Harvey, 518 F.3d 1233,1240-41 (11th Cir. 2008). The documents filed with the Court indicate that the alter ego theory was specifically addressed once by the Connecticut court – in its April 10, 2007 Order denying several motions to dismiss filed by the defendants in that case. In the April 10, 2007 Order [Doc. No. 20-6], the Connecticut court denied a motion to dismiss for lack of personal jurisdiction after finding that the amended complaint in that action stated a *prima facie* case of personal jurisdiction by reason of the alter ego allegations in the amended complaint. In so ruling, the Connecticut court did not find that the defendants in that case were alter egos of each other, only that the amended complaint set forth sufficient allegations to support such a theory. The Connecticut Case was ultimately resolved by the entry of a default judgment against the defendants as a sanction for discovery abuse. "[T]he Fifth Circuit, as well as other circuits, have repeatedly held that an issue is 'actually litigated' and preclusion is appropriate when a default judgment is entered as a sanction for discovery abuses and dilatory tactics, or where a party had a full and fair opportunity to defend a case on the merits, but subsequently chose not to do so." Cornwell v. Loesch, No. 3:03-CV-2826-P, 2004 U.S. Dist. LEXIS 30147 (N.D. Tex. Feb. 27, 2004) (citing Caton v. Trudeau, 157 F.3d 1026, 1029 (5th Cir. 1998); In re Gober, 100 F.3d at 1206; FDIC v.

---

(Conn. 1982); see also Zaist v. Olson, 227 A.2d 562 (Conn. 1967) ("If plaintiff can show that there was such a unity of interest and ownership that the independence of the corporation had in effect ceased or had never begun, an adherence to the fiction of separate identity would serve only to defeat justice and equity."). In Massachusetts, courts consider a number of factors in determining whether to ignore corporate formalities to provide a remedy for injuries and to avoid injustice, including common ownership, control, intermingling of assets, capitalization, observance of corporate formalities, and so forth. Attorney General v. M.C.K., Inc., 736 N.E.2d 373 (Mass. 2000).

Daily(In re Daily), 47 F.3d 365, 368 (9th Cir. 1995); Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush), 62 F.3d 1319, 1324 (11th Cir. 1995)).  Having reviewed the docket in the Connecticut Case and the rulings filed by Plaintiff, the Court concludes that Defendants GN New Hampshire and Ferrous Miner had a full and fair opportunity to defend the Connecticut Case on the merits but chose not to do so.  Under these circumstances, and because Defendants GN New Hampshire and Ferrous Miner could only have been found liable in the Connecticut Case through the application of an alter ego theory, the Court concludes that the alter ego issue was actually litigated in the Connecticut Case.  Similarly, because Defendants GN New Hampshire and Ferrous Miner could only have been held joint and severally liable in that case as alter egos, the Court concludes that the alter ego finding was a necessary and critical part of the judgment in the Connecticut Case.

The Court moreover agrees with SNET's assertion that GN New Hampshire and Ferrous Miner had a full and fair opportunity to contest SNET's alter ego allegations in the Connecticut Case.  Instead of properly litigating this issue, however, the defendants in that case, including GN New Hampshire and Ferrous Miner, were found to have lied to the Connecticut court, to have destroyed and withheld documents in bad faith during the discovery period, and to have prejudiced or destroyed SNET's ability to prove its Connecticut Case.

The Court therefore concludes that all the elements of collateral estoppel are satisfied and that GN New Hampshire and Ferrous Miner are collaterally estopped from challenging that they are alter egos of Global NAPs.  For this reason, the Court has personal jurisdiction over GN New Hampshire and Ferrous Miner and the motion to dismiss is due to be denied.

### 3. *Opportunity to Amend Complaint*

Having determined that the Court may properly exercise personal jurisdiction over Defendants GN New Hampshire and Ferrous Miner, the Court concludes that there is need for Plaintiff to amend its Complaint to include allegations relating to

the alter ego theory.

### E. Conclusion

For the foregoing reasons, the Court hereby **DENIES** Defendants' Motion to Dismiss for Lack of Personal Jurisdiction [Doc. No. 15].

## II. MOTION TO STAY DISCOVERY

In this motion, Defendants request that this Court stay discovery until the United States Court of Appeals for Second Circuit has issued a decision in the appeal of the default judgment entered in the Connecticut Case. Defendants submit that the judgment entered by the Connecticut court is not final, and that the instant case, in which Plaintiff seeks only to recover on the judgment entered in the Connecticut Case, will be moot if the Second Circuit reverses the default judgment. Having thoroughly reviewed all materials filed by the parties, the Court concludes that discovery in this matter should be stayed for a period of sixty (60) days, at which time discovery will commence, regardless of whether the Second Circuit has issued a decision. During the pendency of this stay, the Court **PROHIBITS and ENJOINS** Defendant 1003 Donnelly from transferring, encumbering, or in any way alienating its interest in the Atlanta Property. After the stay has expired, the discovery period in this case will be limited to four months.

## III. MOTION TO EXTEND DEADLINES

The Court hereby **GRANTS** as unopposed Defendants' motion to extend deadlines. The deadlines for filing dispositive motions and the proposed consolidated pretrial order will be subsequent to the expiration of the discovery period in this case, as provided in the Local Rules.

## IV. SUMMARY

For the reasons and to the extent stated herein, the Court **DENIES** Defendants Global NAPS New Hampshire, Inc. and Ferrous Miner Holdings, Ltd.'s Motion to Dismiss [Doc. No. 15], and **GRANTS** Defendants 1003 Donnelly Avenue, Inc., Global NAPS, Inc., Global NAPS Networks, Inc. and Global NAPS Realty, Inc.'s

Motion to Stay Discovery [Doc. No. 21] and Defendants 1003 Donnelly Avenue, Inc., Global NAPS, Inc., Global NAPS Networks, Inc. and Global NAPS Realty, Inc.'s Motion to Extend All Deadlines [Doc. No. 35].

        SO ORDERED this 2nd day of September, 2009.

        *s/   CLARENCE COOPER*

        CLARENCE COOPER
        UNITED STATES DISTRICT JUDGE