IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| THE SOUTHERN NEW ENGLAND TELEPHONE COMPANY,<br><br>　　　Plaintiff,<br><br>v.<br><br>1003 DONNELLY AVENUE, INC., GLOBAL NAPS, INC., GLOBAL NAPS NEW HAMPSHIRE, INC., GLOBAL NAPS NETWORKS, INC., GLOBAL NAPS REALTY, INC., and FERROUS MINER HOLDINGS, LTD.,<br><br>　　　Defendants. | No. 1:08-CV-03816-CC |

**THE SOUTHERN NEW ENGLAND TELEPHONE COMPANY'S REPLY
MEMORANDUM IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**
(REDACTED)

James R. Thompson
AT&T Southeast
675 West Peachtree Street
Suite 4300
Atlanta, Georgia 30375
Tel: (404) 927-2868
Fax: (404) 927-3624
Georgia Bar No. 708530

Bettina Getz (admitted *pro hac vice*)
Lauren R. Noll (admitted *pro hac vice*)
Anne M. De Geest (admitted *pro hac vice*)
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois  60606
Tel: (312) 782-0600
Fax: (312) 701-7711

## TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................................................1

II.  REALTY'S CONVEYANCE OF THE LAS VEGAS PROPERTY
     WAS ACTUALLY FRAUDULENT. ..........................................................2

    A.   SNET Has Established The Badges Of Fraud As A Matter Of
          Law ..............................................................................................................2

        1.   Donnelly Is an Insider of Realty ................................................2

        2.   Realty Retained Possession of the Property After the
               Transfer. ..........................................................................................4

        3.   SNET Established That Realty Had Been Sued .........................6

        4.   Defendants Concealed the Conveyance's True
               Circumstances. ................................................................................7

        5.   There Was No Consideration......................................................7

        6.   Realty Was or Became Insolvent Shortly After the
               Transfer. ..........................................................................................9

        7.   The Transfer Was of Substantially All of Realty's Assets......11

        8.   Realty Incurred Substantial Debts Before And After The
               Conveyance. ..................................................................................13

    B.   Defendants Failed to Meet Their Burden of Proof. ...........................13

III. THE CONVEYANCE WAS CONSTRUCTIVELY FRAUDULENT .......15

CONCLUSION ................................................................................................15

## I. INTRODUCTION

Defendants have failed to create any genuine issues of material fact. Instead, they attempt to divert the Court's attention from key, uncontroverted evidence. For example:

- Defendants dismiss as "immaterial" the District of Connecticut's $5.8 million judgment against Global NAPs Realty, Inc. ("Realty") and other Global NAPs entities after the court made the extraordinary finding that the defendants had destroyed documents and committed a fraud on the court. Resp. SUMF ¶ 2. This case would not exist without those fraudulent acts.

- Defendants repeatedly ignore the findings of several federal courts that the Global NAPs entities, including Realty, are alter egos of each other. Resp. SUMF ¶¶ 18-20. These holdings are material because courts treat alter egos as one, so that any act committed by one is attributed to all. If one is bound by a judgment, the others are also bound. This case therefore does not "solely concern the transfer of property between Realty and Donnelly"—as defendants describe it—but as a matter of law includes Realty's alter egos and the mountain of undisputed evidence regarding those entities.

- Defendants quibble that several of SNET's undisputed facts "impermissibly joins two or more facts" in one paragraph. *E.g.*, Resp. SUMF ¶¶ 34, 36. Each time a fact is described in more than one sentence, defendants interpose this objection and often do not address the substance of the point. The local rules, which limit the number of *facts* and not the number of *sentences*, deem these facts admitted by defendants.

- Defendants do not address Realty's act of transferring its only three pieces of real property in less than a year to Frank Gangi-owned shell companies.

Moreover, defendants ignore that Frank Gangi ("Frank"), their 30(b)(6) witness, could not testify about several topics in the deposition notice.

██████████████████████████████████████████

██████████████████████████ That statement alone ends this case.

To avoid summary judgment, a party must offer specific facts showing that there is a genuine issue for trial. Defendants have failed to do so. The uncontroverted evidence establishes that Realty fraudulently transferred the property at issue to the detriment of creditors such as SNET. Defendants should not be permitted to prolong this case on the strength of unsubstantiated denials and mischaracterizations of fact and law.

## II. REALTY'S CONVEYANCE OF THE LAS VEGAS PROPERTY WAS ACTUALLY FRAUDULENT.

### A. SNET Has Established The Badges Of Fraud As A Matter Of Law.

#### 1. Donnelly Is an Insider of Realty.

It is undisputed that the transfer of the Atlanta property was from one company wholly owned by Ferrous Miner, and thus Frank, to another company owned either by Ferrous Miner or Frank. Defendants attempt to avoid this inescapable conclusion by proffering inconsistent testimony from their 30(b)(6) witness (Frank) on the subject of who owns Donnelly. First, defendants admitted that Frank owned Donnelly. SUMF Ex. G at 3. Frank dismissed those binding admissions as a "scrivener error" and testified that "I own Ferrous Miner, Ferrous Miner owns Donnelly; that's my understanding." SUMF Ex. B at 162-63. After

2

the deposition, defendants produced a stock certificate reflecting Frank's ownership of one share of Donnelly.  Notably, that certificate does not indicate whether that one share is the only share.  Defendants now submit an affidavit from Frank that he is the sole shareholder of Donnelly and "[a]fter reflecting on the matter," his "speculation" at his deposition "was just that."  Def. Ex. A.

However, "statements in an affidavit that contradict sworn deposition testimony cannot be used to create a genuine issue of material fact." *Huddleston v. R.J. Reynolds Tob. Co.*, 66 F.Supp.2d 1370, 1373 (N.D. Ga. 1999).  This rule is particularly applicable where the affiant is also the 30(b)(6) witness, who has an obligation to investigate and provide binding testimony for the corporate defendants he represents. *Rainey v. Am. Forest,* 26 F.Supp.2d 82, 94-95 (D.D.C.1998) ("[A] corporation cannot later proffer new or different allegations that could have been made at the time of the 30(b)(6) deposition;" an "eleventh hour alteration is inconsistent with Rule 30(b)(6), and is precluded by it").

Ultimately, however, defendants' game-playing is irrelevant; it is undisputed that Ferrous Miner wholly owns Realty, and that Frank is the sole shareholder of Ferrous Miner.  SUMF ¶¶ 12, 13.  Thus, regardless of whether Frank directly or

3

Frank indirectly via Ferrous owns Donnelly, both defendants are owned by Frank.[1] As a matter of law, defendants are insiders. Pl. Opening Brief ("Op. Br.") at 7-10.

Besides Frank's improper and irrelevant affidavit, defendants offer no other evidence. Rather, they take issue (Def. Resp. Br. at 12) with *South Side National Bank*—a case that is virtually on all fours with this one—because it is from another jurisdiction. Cases from other courts interpreting uniform acts are deemed persuasive by Georgia courts. Op. Br. at n.1. Defendants' position that the case is distinguishable because the "transferor and transferee [in *South Side*] were both wholly owned by the same individual" is belied by the fact that Frank controls and ultimately owns both Realty and Donnelly. Thus, *South Side* is compelling here. Defendants do not even attempt to distinguish any of SNET's other cases, which is not surprising because they all hold that the various defendants are insiders.

    2.    Realty Retained Possession of the Property After the Transfer.

Several federal courts—including this one—have found that the various Global entities are alter egos of each other, holdings that defendants ignore. Op. Br. at 8, n.3.[2] Thus, the fact that Realty, either directly or through its alter egos,

---

[1] Defendants' assertion (at 10) that "Donnelly is not owned by anyone who also owns an interest in Realty" is therefore incorrect.

[2] Indeed, this Court held that defendants were collaterally estopped from arguing that Global NAPS New Hampshire and Ferrous Miner are not alter egos of Global Inc. SUMF ¶ 18. Thus, to allege that those entities, plus the other alter egos, should be dismissed from the case because SNET has not made an alter ego claim in this case is wholly inconsistent with this Court's ruling, and those of the other federal courts that have addressed the alter ego issue.

acted as owner of the property both before and after the transfer is evidence that Realty fraudulently retained possession.

It is undisputed that Realty's alter egos, such as defendants Global NAPs Networks, Inc. and Global NAPs, Inc., paid invoices associated with use of the property post-April 2005. They performed all of the maintenance and employed all of the personnel on site. Realty had the same, unfettered access to the property both before and after the transfer. SUMF ¶¶ 96-103, 113-19; see also *U.S. v. Engh,* 330 F.3d 954, 956 (7th Cir. 2003) ("Transferring the title of assets while retaining their use and enjoyment is a sham."); Op. Br. at 19-20.

Defendants offer no evidence that Donnelly acted as the owner of the property. An undocumented use agreement, put in place between alter egos and by the same individual on both sides of the transaction, does not suffice. ███ ████████████████████████████████████████ ████████████████████████████ ████████████ ████████████████████████████████████████ ████████████████████████████████ Although the

---

[3] Defendants do not mention these documents in their brief and instead argue elsewhere that the testimony of the accountants who prepared them goes only describes the "data collection" process used to create the documents but does not authenticate the documents. Resp. SUMF ¶ 106. To the contrary, the excerpts make clear that the tax professionals were describing the data collection procedures they followed with respect to these exact documents. Ex. W at 116. Out of an abundance of caution, SNET is attaching hereto additional pages that make the point even more clearly. Ex. 1.

5

investigation might have been "theoretical" (Resp. SUMF ¶ 120), the fact that the CFO did not work for Donnelly is not.

       3.     SNET Established That Realty Had Been Sued.

Defendants refuse to admit to the Court (at 14) that Realty was a defendant in the *Cole, Raywid* case as of April 2005. They also refuse to admit that they were defendants or counter-defendants in other cases cited by SNET. It is incredulous that defendants do not admit facts of which this Court can take judicial notice. *E.g.*, *Davis v. Williams Comm.,* 258 F.Supp.2d 1348, 1352 (N.D. Ga. 2003) ("[T]he Court [can]take judicial notice of official public records"); *U.S. v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) ("[A] court may take judicial notice of a document filed in another court … to establish the fact of such litigation..").

Defendants do not dispute that their alter egos had been named in six cases as of April 2005. Op. Br. at 12. "The effect of applying the alter ego doctrine…is that the corporation and the person who dominates it are treated as one person, so that any act committed by one is attributed to both, and if either is bound, by contract, judgment, or otherwise, both are equally bound." *Dudley v. Smith*, 504 F.2d 979, 982 (5th Cir. 1974). ███████████████████████████████████ ███████████████████████████████████████████████████████████ As a matter of law, Realty, directly and via alter egos, had been sued as of April 2005.

        4.        Defendants Concealed the Conveyance's True Circumstances.

Defendants rely solely on the fact that the warranty deed was publicly filed and mischaracterize SNET's argument as being that the deed must contain every detail of the conveyance. To the contrary, a transaction is concealed if *none* of the documentation reveals the true circumstances. Here, not only does the deed fail to describe the transaction's purported consideration, but no other document does either. Other than the "check" to purchase the property in 2000 (and Frank doesn't "retain checks"), there is not a single document that memorializes the loan purportedly being transferred from one insider to another. SUMF ¶ 69. Coupled with the Connecticut court's finding that several Global NAPs entities, including Realty, had destroyed financial data documents, there is not "sufficient information that would put creditors on notice of the fraudulent nature of the transaction." *In re Prosser*, 2009 WL 3270765, at *8-9 (Bankr. D.V.I. 2009); see also *Grochocinski v. Schlossberg*, 402 B.R. 825, 838 (Bankr. N.D. Ill. 2009) ("even though the [Articles of Agreement] for the sale of the…Property was recorded…, the side agreements that the Debtor had were concealed").

        5.        There Was No Consideration.

Although satisfaction of an antecedent debt may constitute fair consideration in certain cases, *the antecedent debt must be valid and properly documented*. Op.

7

Br. at 14-15.  Vague, uncorroborated testimony is not sufficient.  Yet, that is exactly what defendants offer—general statements that "unburdening Realty from a substantial debt constitutes valuable consideration."  Bereft of any documentation connecting specific transfers with specific repayments," this testimony does not create an issue of fact.  It also fails to address the insider status of the parties.  *South Side*, 783 S.W.2d at 144 (no consideration where debtor was the "alter ego of both corporations and his conveying the properties to repay an indebtedness was tantamount to satisfying a debt to himself").

Defendants also ignore the plethora of evidence affirmatively establishing the lack of consideration for the conveyance.  In addition to the dispositive fact that there is not a single document reflecting the purported consideration, there are no loan agreements between the defendants, or promissory notes.  SUMF ¶¶ 71-72.  Donnelly has not recorded an interest expense.  *Id.*  Frank's bald assertion that he simply "understands what we're supposed to do" (*id.*, ¶ 69) simply is not enough—particularly where the conveyance occurred at a time when debts and obligations were mounting and at a time where Frank decided to transfer Realty's two other pieces of real property using the same undocumented procedures.

Moreover, the undisputed evidence is that neither defendant performed a formal appraisal of the property to determine a fair price.  SUMF ¶ 60.  Richard

Gangi's undocumented consultation with a broker does not address the evidence that (1) the property was conveyed for only $12,500 more than when it was first acquired five years before; (2) the official appraised value almost doubled during this same five-year period; ███████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████  Moreover, the *same broker* advised in 2006 that the property could be sold for up to $4.5 million. Ex. 2 (attached); SUMF ¶ 47. In any event, the actual purchase price is arguably meaningless, since the purported consideration of "mov[ing] the debt from over here to over there" (*id.* ¶ 67) could have been for a billion dollars and had the same effect on defendants' operations.

      6.    Realty Was or Became Insolvent Shortly After the Transfer.

Realty does not controvert crucial pieces of evidence that establish that Realty was insolvent around the time of the conveyance. First, Realty does not dispute—indeed, it mentions nowhere in its brief—that the district court in the Connecticut action expressly found that the Global NAPs entities, including Realty, had destroyed financial data documents undoubtedly relevant here. ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

9

█████████████████████████ Defendants also overlook that their 30(b)(6) witness had "no idea" whether Realty's revenues exceeded its expenses in 2005. *Id*. at 18. This topic was identified in the notice of deposition (Ex. 3) (attached), and defendants should not profit from their failure to comply with the Federal Rules.

Defendants also ignore, and therefore must not dispute, that in 2005, Realty had rental obligations of "between 100 [thousand] and $200,000…a month." SUMF ¶ 27. ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████They do not attempt to bolster Frank's (incorrect) testimony that "no one is suing Realty for it…being provided a service and not paying for it," and they do not mention the lawsuit that Realty's former attorneys filed against Realty in 2004 for Realty's failure to pay its legal bills, plus the prejudgment remedy that those attorneys secured. *Id.*, ¶ 79.

The arguments that defendants make do not create issues of fact. ████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Although Frank refused to authenticate the document, he was able to identify the same email in a previous deposition just 4 months prior. Ex. 4 (attached).

As a matter of law, Realty was insolvent around the time of the transaction. Realty's response—misconstruing the evidence it wants to address, and ignoring the evidence that it does not—does not create genuine issues of fact.

7. The Transfer Was of Substantially All of Realty's Assets

Defendants failed to provide any evidence that the conveyance was not of substantially all of Realty's assets. To the contrary, their 30(b)(6) witness could not identify the assets that Realty had in 2005, even though a topic of the 30(b)(6) deposition was the "nature and extent of your assets." Ex. 3 at 2.[4]

Defendants similarly do not mention that Realty only owned three pieces of property at the end of 2004 and that it transferred *each and every one* of them to corporate shells owned by Frank in exchange for the shell assuming an undocumented debt. SUMF ¶¶ 93-95. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[4] When asked to identify Realty's assets, Frank listed "off the top of [his] head" "racks," "leases that it had with other people," "corporate goodwill," and "customers." Ex. 5 (attached; F. Gangi Dep. at 227)  Regarding racks, which are structures that "customers put equipment in," Frank did not know the amount of rent that Realty made on leasing racks. *Id.* at 229.  He had "no idea" as to the amount of money that Realty's "customers" generated. *Id.* at 228.  He did not know "how to value" corporate goodwill. *Id.*  Defendants presented no evidence explaining how Realty acting as a lessee could be an asset rather than a liability.  In short, defendants presented no evidence as to the amount of Realty's purported assets, even though this was a specifically identified topic of the 30(b)(6) deposition. Ex. 3 at 2. As such, defendants have failed to create a genuine issue of material fact on the subject.

11

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████ Frank testified in this case that he did not " want somebody to slip on the walkway going into…Realty's facility … and then sue for a billion dollars…and then take away a building that had nothing with them slipping in a different facility entirely." *Id.,* ¶ 74.

Defendants question, in a footnote, whether the Atlanta property is an asset because Realty's ownership interest "came with a competing liability for the entire purchase price." Although the UFTA excludes property that is "encumbered by a valid lien" from its definition of "asset," it defines "valid lien" in a way as to preclude its application here: "a lien that is effective against the holder of a judicial lien subsequently obtained by legal or equitable process or proceedings." O.C.G.A. 18-2-71(2)(A),(13). Defendants have not offered any evidence that Frank, Realty, or any other Global NAPS entity ever recorded a lien on the property. *FDIC v. Willis*, 497 F.Supp. 272, 281 (S.D. Ga. 1980) ("No mortgage, deed to secure debt or deed of trust may be created in Georgia unless it be in writing."); *Comer v. Calim*, 716 N.E.2d 245, 249 (Ohio App. Ct. 1998) ("[W]ithout perfection, the asset is not 'encumbered by a valid lien' and still falls within the definition of an asset belonging to the debtor.

12

       8.     Realty Incurred Substantial Debts Before and After The Conveyance.

Defendants ignore the fact that three district courts, including this one, have found that the Global entities, including Realty, are alter egos of each other. SUMF ¶¶ 18-20. The import of these holdings is that a judgment against one Global NAPs entity is a judgment against its alter egos. *Dudley,* 504 F.2d at 982. Thus, the $250,000 prejudgment remedy that the Cole, Raywid law firm obtained against Global Inc. is binding on Realty. So, too, the April 2006 $5.2 million prejudgment remedy that SNET obtained against Global NAPs in the Connecticut case. Realty also was liable on leases totaling $200,000 a month in 2005.

    B.    Defendants Failed to Meet Their Burden of Proof.

Defendants argue (at 23) that they do not have the burden of proof to rebut the badges of fraud that SNET has established, but they do not cite a single case of their own. Rather, they attempt to distinguish some of SNET's cases in ways that simply are incorrect, and ignore the others. They also overlook their obligations under Rule 56 to offer evidence creating a genuine issue for trial, which they manifestly have not done here.

Defendants claim that *U.S. v. Reid* is inapplicable because it involves a repealed statute. That case was decided under the Uniform Fraudulent Conveyance Act ("UFCA"), which was the predecessor to the UFTA. Courts, when analyzing

13

fraudulent transfers under the UFTA, rely on UFCA cases. *In re Canyon,* 343 B.R. 615, 634 n.15 (S.D. Ohio 2006) ("Similar policies underlie these two uniform acts; thus, the Court relies on case law interpreting both the UFCA and the UFTA."); *Sedwick v. Gwinn*, 873 P.2d 528, 531 (Wash. Ct. App. 1994) (same). For the same reason, *U.S. v. Denlinger*, 982 F.2d 233, 236 (7th Cir. 1992). is on point here.

Defendants overlook the remainder of SNET's cases, all of which establish that burden shifting applies. Moreover, the Federal Rules also require defendants to come forward with competent evidence. "When the moving party has carried its burden under Rule 56(c),…the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *De Leon-Granados v. Eller & Sons Trees, Inc.,* 581 F. Supp. 2d 1295, 1302 (N.D. Ga. 2008) (same) (Cooper, J.).

Defendants also argue that fraudulent intent cases cannot be decided on summary judgment. To the contrary, they can, and often are. *E.g.*, *Otero v. Vito*, 2009 WL 3063426 (M.D. Ga. 2009); *Rolleston v. Cherry*, 521 S.E.2d 1 (Ga. Ct. App. 1999). As the Seventh Circuit observed in *Denlinger*, 982 F.2d at 237:

> Where all circumstantial evidence points to fraudulent intent, at least some of it has to be explained away. Neither summary judgment nor directed verdict can be avoided by simply saying, "nevertheless, it is not so." [Defendants] apparently are asking this Court…to

> eschew summary judgment simply because motive and intent are material. We cannot.

The burden shifted to defendants to explain away the badges of fraud, and they failed to do so. They have not provided a single credible explanation for their conveyance to an insider, at a time when they were transferring all their real property to insiders, when they were insolvent, and when lawsuits and debts were increasing. Indeed, Realty's other officer/director besides Frank *admitted* that the conveyance of the Atlanta property was done precisely to avoid creditors.

## III. THE CONVEYANCE WAS CONSTRUCTIVELY FRAUDULENT.

Realty's conveyance of the Atlanta property to Donnelly also was constructively fraudulent. Realty did not receive reasonably equivalent value for the property, and at the time of the transfer, Realty had little, if any, remaining assets and mounting debts. Op. Br. at 28-29. Defendants' arguments suffer from the same flaws as their analysis of actual fraud and are treated in Part II, *supra*.

## CONCLUSION

For the reasons set out above and in SNET's opening papers, summary judgment in favor of SNET is warranted.

/s Lauren R. Noll

Respectfully submitted, this 13th day of May, 2010.

                                  THE SOUTHERN NEW ENGLAND TELEPHONE COMPANY,

                                  By and through its attorneys,

                                  James R. Thompson
                                  AT&T Southeast
                                  675 West Peachtree Street, Suite 4300
                                  Atlanta, Georgia 30375
                                  Tel: (404) 927-2868
                                  Fax: (404) 927-3624
                                  Georgia Bar No. 708530

                                  Bettina Getz (admitted *pro hac vice*)
                                  Lauren R. Noll (admitted *pro hac vice*)
                                  Anne M. De Geest (admitted *pro hac vice*)
                                  MAYER BROWN LLP
                                  71 South Wacker Drive
                                  Chicago, Illinois  60606
                                  Tel: (312) 782-0600
                                  Fax: (312) 701-7711

<u>**CERTIFICATE OF COUNSEL**</u>

Pursuant to Local Rules 7.1 D and 5.1B, the undersigned counsel hereby certifies that **PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** has been prepared in Times Roman font, 14 point.

By: <u>/s Anne M. De Geest</u>
   Anne M. De Geest

## CERTIFICATE OF SERVICE

I, Anne M. De Geest, an attorney, hereby certify that a true and correct copy of the foregoing **PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** was served, pursuant to Local Rule 5.1, upon the parties of record via ECF electronic filing on this 13th day of May, 2010.

                By:   /s Anne M. De Geest
                           Anne M. De Geest